**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>Todd M. Horstkotte</u>


          v.                                    08-cv-061-JL


<u>William Wrenn, Commissioner,</u>
<u>New Hampshire Department of</u>
<u>Corrections, et al.</u>[1]


**<u>REPORT AND RECOMMENDATION</u>**


     Before the Court is Todd Horstkotte's complaint (document

no. 1), filed pursuant to 42 U.S.C. § 1983, the Americans with

Disabilities Act, 42 U.S.C. 12132 *et seq.* ("ADA"), State tort

law, the International Covenant on Civil and Political Rights, 6

I.L.M. 368 ("ICCPR"), and the Convention Against Torture and

Other Cruel, Inhuman, or Degrading Treatment or Punishment, 18

---

     [1]In addition to Wrenn, Horstkotte names the following New
Hampshire Department of Corrections employees as defendants to
this action: New Hampshire State Prison ("NHSP") Warden Richard
Gerry, Health Services Director Robert McLeod, Chief Physician
Celia Englander, Nurse Practitioner Corina Neculai, and Health
Services Administrator Joyce Leeka.  In addition, I find that
Christopher Kench, an employee in Wrenn's office, and Jeffrey
Perkins, NHSP Food Services Supervisor, are intended defendants
to this action as, although they are not named in the caption,
they are identified in the narrative of the complaint as
individuals who were responsible for the alleged violations of
Horstkotte's rights.

U.S.C. § 2340 *et seq.* ("CAT").[2]   Horstkotte seeks damages and
injunctive relief, alleging that his rights were violated when he
was denied adequate medical care during his incarceration at the
New Hampshire State Prison ("NHSP").   The complaint is before me
for preliminary review to determine whether, among other things,
it states any claim upon which relief might be granted.   See 28
U.S.C. § 1915A; United States District Court for the District of
New Hampshire Local Rule ("LR") 4.3(d)(2).   For the reasons
stated herein, I recommend that the claims alleging violations of
international treaties be dismissed from this action.   In an
Order issued simultaneously with this Report and Recommendation
(hereinafter the "Simultaneous Order"), I direct that the claims
alleging violations of the Eighth Amendment, the ADA, and State
law, proceed against defendants Wrenn, Kench, Gerry, Englander,
McLeod, Leeka, Neculai, and Perkins.

---

[2]Horstkotte also asserts a nominal claim for a writ of
habeas corpus, alleging that the conditions of his confinement
are so violative of his rights that he should be released from
incarceration.   Habeas relief is only available, however, to an
inmate challenging the fact or length, rather than the
conditions, of his confinement.   Preiser v. Rodriquez, 411 U.S.
475, 489–99 (1973); Wolff v. McDonnell, 418 U.S. 539, 554 (1974).
Here, Horstkotte's complaint challenges the constitutionality of
the conditions of his confinement at the NHSP.   I will not,
therefore, consider Horstkotte's request for habeas relief as
part of this action.

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

<u>Background</u>

Todd Horstkotte is a New Hampshire prisoner housed at the NHSP.  On August 15, 2007, during a chance conversation with a phlebotomist, Horstkotte learned that he had been diagnosed with Hepatitis C.  Horstkotte confirmed his diagnosis by sending an inmate request slip ("IRS") to the NHSP's Health Services Center ("HSC").

On August 21, 2007, HSC Physician's Assistant Gayle Spelman responded to Hortskotte's IRS, apologizing for the manner in which he learned of his diagnosis and stating that she would arrange an appointment for Horstkotte to meet with HSC physician Celia Englander.

Horstkotte did not receive an appointment with Dr. Englander until December 10, 2007.  Since learning of his diagnosis four months prior, the only medical treatment he had received related to the Hepatitis C was the first of three rounds of vaccinations for Hepatitis A and Hepatitis B, which were administered in October of 2007.[3]  At the December 10 appointment, Dr. Englander

_____

[3]Horstkotte alleges that there was a delay in administering the second round of his Hepatitis A and Hepatitis B vaccinations. Accordingly, the series had to be restarted.  While Horstkotte seems to point to this occurrence as evidence of the HSC's inattention to his Hepatitis C treatment, the vaccinations are not alleged to have actually been treatment for Horstkotte's

told Horstkotte that his Hepatitis C was between Stage 2 and
Stage 3 of the disease.  Horstkotte immediately requested
treatment, expressing to Dr. Englander that his health was a
priority for him.  Horstkotte alleges that his request for
treatment was denied on the basis that his minimum parole date
("MPD")[4] of January 16, 2008, which rendered him ineligible to be
treated according to the Hepatitis C treatment protocol utilized
by the HSC.  The Hepatitis C treatment protocol establishes
criteria by which inmates with Hepatitis C are evaluated for
treatment eligibility.  These criteria include the severity of
the disease and the condition of the inmate's liver, the age of
the inmate, other physical, mental heath and medication issues
the inmate may have, and the inmate's minimum parole date.  The
HSC's stated reason for considering an inmate's MPD before
providing medication treatment to an inmate, is that the course
of medication used to treat Hepatitis C requires that an inmate

_____

Hepatitis C, but instead, are a recommended prophylactic for all
Hepatitis C patients.  No harm is alleged to have occurred due to
the delay and restarting of the vaccination.

    [4]An inmate's MPD is the date upon which he might first be
considered to be eligible for parole consideration.  There is no
guarantee that an inmate will be released at or near his MPD.
The inmate might, depending on the parole board, remain
incarcerated until he has served his maximum sentence.
Horstkotte's maximum sentence expires on January 2, 2011.

be available for continuous treatment for a period of eighteen
months.  Accordingly, inmates who are eligible to be released
within eighteen months are deemed ineligible for treatment,
without regard to the other factors relevant to application of
the treatment protocol, or other ways in which treatment might be
continued once an inmate is released.

When Horstkotte told Dr. Englander that he wanted to receive
treatment for his disease, she advised him that Robert McLeod,
the HSC Medical Director, was responsible for the protocol and
the implementation of the protocol at the HSC.  Horstkotte
alleges that McLeod is not a physician, and is not, therefore,
qualified to determine Horstkotte's eligibility for treatment for
a medical condition.  Further, Horstkotte alleges that the
consideration of the cost of treatment and his MPD were both
factors in denying him treatment.

On December 12, 2007, Horstkotte sent Dr. Englander an IRS,
following up on his request for treatment.  Two days later,
Horstkotte received a response from Joyce Leeka, the HSC
Administrator, advising him that his eligibility for treatment
under the Hepatitis C protocol depends on his MPD and the stage
of fibrosis of his liver.  Leeka indicated that Horstkotte's MPD

was January 16, 2008, and his fibrosis was "low," and that if Horstkotte had further questions he should report to sick call to make an appointment to speak with Dr. Englander.  Horstkotte has attached lab test results to his complaint which characterize his level of fibrosis at that time as "high," and his level of necroinflammatory activity, another indicator of the progression of Hepatitis C, as "severe."  In addition, other tests results were abnormal, indicating that the disease was having an adverse impact on his liver, and his health in general.

Horstkotte sent Dr. Englander a sealed confidential IRS, containing medical questions.  Horstkotte states that Leeka intercepted the IRS, and responded to it, even though she is not a physician and not qualified to answer the questions Horstkotte put to Dr. Englander in the IRS.  Leeka responded by again advising Horstkotte to make an appointment with Dr. Englander, knowing that the appointment would take more than three months to schedule, further delaying Horstkotte's chances of receiving effective treatment for Hepatitis C.

On December 18, 2007, Horstkotte sent a grievance to NHSP Warden Richard Gerry, requesting that Gerry lend his "authoritative support" to Horstkotte's request for treatment.

On December 21, 2007, Gerry forwarded the grievance to McLeod for a response.  McLeod, although he is not a physician, denied Horstkotte's request for medical treatment.  Horstkotte alleges that this act violated not only his rights, but the prison's internal policies and procedures that require physicians to make certain medical decisions.[5]  Horstkotte also requested "authoritative support" for treatment from New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn, asserting in that request that his January 2008 MPD should not be a bar to treatment, as he did not expect to be granted parole, and that he had plenty of time to be treated prior to his maximum sentence expiration date on January 2, 2011.  On January 16, 2008, Christopher Kench, a DOC employee in Wrenn's office, responded to the request, stating that Horstkotte would be denied treatment based on his MPD.

Meanwhile, on December 17, 2007, Horstkotte sent an IRS to McLeod requesting the criteria for treatment eligibility under the Hepatitis C protocol.  McLeod did not respond.

---

[5]DOC Policy and Procedure Directive 6.44(III)(C) provides that "Medical, psychiatric and dental matters involving medical judgement are the sole province of the physician, psychiatrist and dentist."

On December 20, 2007, Horstkotte sent an IRS to the HSC asking if a liver biopsy was necessary to make a proper diagnosis and to determine the proper treatment for Hepatitis C.  He did not receive an answer from the HSC.  He then filed a grievance with Gerry.  After he filed the grievance, Horstkotte received an answer from Dr. Englander, stating that an appointment for Horstkotte to discuss his disease with her had been set, but that his sentence was too short to receive any treatment, and therefore, no testing that served a diagnostic or monitoring purpose, such as a liver biopsy, would be conducted.  On January 4, 2008, during a visit to the HSC, Horstkotte discovered that no appointment with Dr. Englander had been set.

Horstkotte requested a copy of his medical records from McLeod.  McLeod failed to provide him with the records.

During the week of January 27, 2008, Horstkotte attended an appointment with Spelman regarding his allergy medications.  At that appointment, he expressed his concerns over not having received an appointment to discuss his disease with Dr. Englander, the fact that his MPD had passed without a parole hearing being scheduled, and that he had received no treatment

for his Hepatitis C.  Two days later, an appointment with Dr. Englander was scheduled for March 11, 2008.

On January 14, 2008, Gerry forwarded Horstkotte's pending grievances and medical questions to McLeod.  McLeod responded to Horstkotte with answers that Horstkotte describes as "absurd and unqualified."  Horstkotte claims that McLeod relied on medical conclusions and information that were not necessarily true in making the decision to deny him treatment.

Hortskotte has already experienced, and continues to experience, the following symptoms of Hepatitis C: dark urine, light-colored stool, elbow pain, leg pain, abdominal pain, and liver pain.  Horstkotte alleges that he has been given ibuprofen by HSC Nurse Practitioner Corina Neculai to combat these symptoms, but that ibuprofen is contraindicated for people with liver disease.  He alleges that he has been denied treatment for the disease itself, effective and appropriate treatment for pain, and access to medical information and records by Wrenn, Kench, Gerry, McLeod, Dr. Englander, Leeka, and Neculai.

Horstkotte also complains that the food provided to NHSP inmates is consistently nutritionally deficient, and that the deficiencies pose a risk to his health.  Horstkotte attempted to

10

resolve this issue by sending an IRS to Jeffrey Perkins, the food service supervisor at the prison, as well as to Gerry, Wrenn, Governor Lynch, and the American Civil Liberties Union, but there has been no change in the nutritional value of the food provided. Horstkotte complains that the lack of a nutritionally appropriate diet increases his risk of ill health, a risk already heightened by Hepatitis C.

Horstkotte claims that without treatment, his disease may progress to a stage where medication is no longer effective as it would be if administered at an earlier stage of the disease. Horstkotte further asserts that without treatment, he is at risk of increased pain, a worsening of his current condition, and progression to other diseases, such as liver cancer or even death.  Further, Horstkotte claims that he will not be granted parole if he is medically unable to work, and will not be considered for medical treatment that would render him able to work because he is past his MPD.

Discussion[6]

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of State law, violate federal constitutional or statutory law.  <u>See</u> 42 U.S.C. § 1983[7]; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330–331 (1986)); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061–62 (1st Cir.).

---

[6]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Horstkotte disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

[7]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Horstkotte alleges that the defendants, all state actors, have denied him rights that accrue to him under federal statutory and constitutional law.  Accordingly, Horstkotte's claims arise under § 1983.

    A.   <u>Inadequate Medical Care</u>

Claims of inadequate medical care in the prison context arise under the Eighth Amendment, which protects inmates from prison officials acting with deliberate indifference to the inmate's serious medical needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1970); <u>Surprenant v. Rivas</u>, 424 F.3d 5, 18–19 (1st Cir. 2005).  To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that he had a serious medical need for which adequate care was not provided.  <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Farmer</u>, 511 U.S. at 832; <u>Estelle</u>, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need, or of the facts from which the need could be inferred, and still failed to provide treatment.  <u>Estelle</u>, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); <u>Kosilek v. Maloney</u>, 221

13

F. Supp. 2d 156, 180 (D. Mass. 2002) (citing <u>Farmer</u>, 511 U.S. at 835-47); <u>see</u> <u>also</u> <u>Gaudreault v. Mun'y of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are based on medical considerations and are of a quality acceptable to the prudent professional standards in the community, tailored to an inmate's particular medical needs. <u>United States v. DeCologero</u>, 821 F.2d 39, 42-43 (1st Cir. 1987). This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately

14

indifferent mental State.  See Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Prison inmates with Hepatitis C may state a constitutional claim for the denial of adequate medical care when they are denied treatment for policy reasons rather than medical reasons. See McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (inmate's allegation that he was denied necessary treatment for Hepatitis C based on a possible release within twelve months alleges deliberate indifference to his serious medical needs); Ruiz v. Heinzl, No. 06–C–478–C, 2006 WL 2882976, *3 (W.D. Wis. 2006) (allegation that inmate was denied treatment for Hepatitis C on the sole basis that he was within eighteen months of release date is sufficient to state a claim under the Eighth Amendment for the denial of adequate medical care for a serious medical need).

Here, Horstkotte has alleged that he has a very serious medical condition, Hepatitis C, which is known to the defendants. Horstkotte was diagnosed with Hepatitis C at the NHSP and has consistently requested further diagnostic testing to determine the extent and progression of the disease, as well as an appropriate treatment plan.  Horstkotte asserts that he has been denied diagnostic testing, medication for his Hepatitis C, an

15

appropriate diet for a person with Hepatitis C, and appropriate
and adequate treatment for the symptoms of the disease.
Horstkotte further alleges that the denial of testing and
treatment has been based entirely on non-medical factors, such as
the cost of treatment, and his MPD, despite his having made the
defendants aware that he will be incarcerated long enough to
receive treatment.  Horstkotte has even been denied all
diagnostic testing on the basis that his MPD renders him
ineligible to receive treatment, although his medical condition
and initial lab results indicate that further diagnostic testing
and treatment for his symptoms and his underlying disease is
warranted.  Horstkotte has sufficiently alleged facts to assert a
claim that the denial of testing, pain medication and treatment
amounts to a knowing refusal by the defendants to provide care
and treatment for his serious medical needs.  Accordingly, I find
that Horstkotte has stated an Eighth Amendment claim for the
denial of medical care, appropriate treatment, and diet, against
defendants Englander, McLeod, Leeka, Neculai, and Perkins upon
which relief might be granted, and I will direct service of this
claim against those defendants in my Simultaneous Order.

Horstkotte has also alleged that defendants Wrenn, Kench, and Gerry were specifically notified of his serious medical condition and the failure of the NHSP medical personnel to provide him with adequate treatment, that they are the officials ultimately responsible for assuring that inmates receive constitutionally adequate medical care, and that they failed to remedy this constitutional deprivation.  Accordingly, I find that Horstkotte has stated a claim for failure to provide adequate medical care against not only the above-named defendants, but also against Wrenn, Kench, and Gerry, upon which relief may be granted.  In my Simultaneous Order, therefore, I will also direct that this claim be served on these defendants.

A.   ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

> Pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public

entity's services, programs, or activities or was
otherwise discriminated against; and (3) that such
exclusion, denial of benefits, or discrimination was by
reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Title II of the ADA applies to inmates in correctional

facilities.  See Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206,

209-10 (1998).  "[P]risons provide inmates with many recreational

activities, . . . services, and educational and vocational

programs, all of which at least theoretically benefit the

prisoners (and any of which disabled prisoners could be excluded

from participation in.)"  Id. at 210 (internal citations

omitted).

Here, Horstkotte asserts that his Hepatitis C renders him a

qualified individual with a disability.  Accepting this assertion

as true for purposes of preliminary review, I must determine

whether or not Horstkotte has alleged that he was denied some

service, program or activity, "or was otherwise discriminated

against" by virtue of his disability.  Specifically, Horstkotte

alleges here that the failure to treat his Hepatitis C denied him

access to medical care because of his particular disability.

Medical care is unquestionably a service provided by the prison.

Horstkotte asserts in this action that it was his specific

18

disabling condition of Hepatitis C, and the protocol employed by the HSC to treat inmates with that disease, that caused him to be denied medical care.  Accordingly, I find that Horstkotte has stated a claim under the ADA upon which relief may be granted. In my Simultaneous Order, I direct that the ADA claim be served on defendants Wrenn, Kench, Gerry, Englander, McLeod, Leeka, and Neculai.

      C.   <u>Claims Based on International Treaties</u>

Horstkotte claims that the defendants' failure to provide him with medical treatment constitutes physical and mental torture.  Horstkotte alleges that the defendants have tortured him in violation of his rights under the ICCPR and the CAT, international treaties with which the United States, as well as the individual states, Horstkotte claims, are obliged to comply. As set out below, however, neither of these treaties provides Horstkotte with the relief he seeks.

      1.   <u>CAT</u>

The CAT is a federal statute that assigns criminal liability to people who commit or conspire to commit torture "outside the United States."  18 U.S.C. § 2340A(a).  Nothing in the statute provides a civil right of action to an individual who alleges

that he was subjected to torture inside the United States.  <u>See</u>
<u>Hooks v. Rich</u>, No. CV 605-065, 2006 WL 565909, *7 (S.D. Ga.
2006).  In fact, the statute explicitly states that "[n]othing in
this chapter . . . shall be construed as creating any substantive
or procedural right enforceable by law by any party in any civil
proceeding."  18 U.S.C. § 2340B; <u>see</u> <u>Hooks</u>, 2007 WL 565909 at *7
(plain language of CAT statute forecloses use of the statute as a
basis for civil liability).  Accordingly, I find that Horstkotte
has failed to state a claim upon which relief might be granted
under the CAT and I recommend that the claim be dismissed from
this action.

       2.   <u>ICCPR</u>

The ICCPR is an international treaty to which the United
States is a party.  "'For any treaty to be susceptible to
judicial enforcement it must both confer individual rights and be
self-executing.'"  <u>Serra v. Lappin</u>, No. C07-01589 MJJ, 2008 WL
929525, *6 (N.D. Cal. 2008) (quoting <u>Cornejo v. County of San</u>
<u>Diego</u>, 504 F.3d 853, 856-57 (9th Cir. 2007)).  The provisions of
the ICCPR that prohibit torture were ratified by the United
States Senate, conditioned on the treaty not being self-
executing.  <u>Serra</u>, 2008 WL 929525 at *6 ) (citing 138 Cong. Rec.

S4781, 4784 (daily ed. Apr. 2, 1992)); see also Sosa v. Alvarez-
Machain, 542 U.S. 692, 728 (2004) (citing, in dicta, the ICCPR as
an example of a non-self-executing, and thus non-enforceable,
treaty).  Accordingly, I find that the ICCPR, as a non-self-
executing treaty, is not judicially enforceable and, therefore,
does not provide Horstkotte with a private right of action that
can be redressed by this Court.  I recommend, therefore, that the
claim based on an alleged violation of the ICCPR be dismissed.

    II.  State Law Claims

    Horstkotte has alleged that the defendants, in addition to
violating his federal constitutional and statutory rights, have
also violated his rights under State law.  Horstkotte brings
State law tort claims for medical malpractice, negligence, and
the intentional infliction of emotional distress against the
defendants, based on the same facts giving rise to his § 1983
claims.  I will exercise this Court's pendant jurisdiction over
the state tort claims, as I find that those claims, arising out
of the same facts and transactions as the federal claims, form
part of the same case or controversy as the federal claims.  See
28 U.S.C. § 1367(a) (allowing court to exercise supplemental
jurisdiction over state law claims that are "so related to the

claims in the action within the original jurisdiction that they form part of the same case or controversy); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  I will therefore direct the medical malpractice, negligence, and intentional infliction of emotional distress claims to be served on defendants Wrenn, Kench, Gerry, Englander, McLeod, Neculai, and Perkins in my Simultaneous Order.

III. Supervisory Liability

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions."  Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted).  A supervisor must be "either was a primary actor involved in, or a prime mover behind, the underlying violation."  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" to the violation alleged.  Id. at 44.

Defendants Wrenn, Kench, Gerry, McLeod, Englander, and Perkins, each serve a supervisory function within the NHSP. Although there is no supervisory liability in § 1983 actions

22

based on a respondeat superior theory of liability, a defendant
supervisor can be held liable based on the defendant's actual
notice of facts sufficient to render the official responsible for
reasonable inquiry into the complaint.  See Feliciano v. Dubois,
846 F. Supp. 1033, 1045 (D. Mass. 1994) (citing Layne v. Vinzant,
657 F.2d 468 (1st Cir. 1981)).  A supervisor also may be held
liable for his own acts, or omissions, if they rise to the level
of reckless or callous indifference to the constitutional rights
of others.  See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87,
91-92 (1st Cir. 1994).  Finally, a supervisor may be held liable
under § 1983 if he or she "formulates a policy or engages in a
practice that leads to a civil rights violation committed by
another."  Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

Crediting Horstkotte's allegations as true, as I must, I
find that defendants Wrenn, Kench, Gerry, McLeod, Englander, and
Perkins, each knew of plaintiff's serious medical condition,
ongoing pain, and his potential need for diagnostic testing and
prompt treatment, and nevertheless denied him care on the
nonmedical basis that he could be released from incarceration on
or after a January 2008 MPD.  These allegations state the minimal
facts necessary to allow plaintiff's Eighth Amendment claim to

proceed against defendants Wrenn, Kench, Gerry, McLeod, Englander, and Perkins in their supervisory capacities.

<u>Conclusion</u>

For the reasons discussed above, I recommend that the claims based on alleged violations of the ICCPR and the CAT be dismissed from this action.  In my Simultaneous Order, I will direct service of the remaining claims on defendants Wrenn, Kench, Gerry, McLeod, Englander, Leeka, Neculai, and Perkins

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13–14 (1st Cir. 1992); <u>United States v. Valencia–Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:     May  5, 2008

cc:     Todd M. Horstkotte, pro se

24