UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


<u>Todd M. Horstkotte</u>

    v.                                  Civil No. 08-cv-61-JL
                                          Opinion No. 2009 DNH 190
<u>Commissioner, New Hampshire</u>
<u>Department of Corrections, et al.</u>


**<u>OPINION AND ORDER</u>**

This case concerns whether a prison provided adequate medical care to an inmate in the early stages of hepatitis C. Plaintiff Todd Horstkotte, formerly an inmate at the New Hampshire State Prison, has sued various prison officials and staff members alleging that they failed to provide adequate care for his disease.  He asserts an Eighth Amendment civil rights claim under 42 U.S.C. § 1983, a discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and state-law claims for negligence, medical malpractice, and intentional infliction of emotional distress.[1]  This court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

Earlier in the case, this court denied Horstkotte's request for preliminary injunctive relief, finding that he was unlikely

-----

[1]Horstkotte also asserted a number of other claims that this court previously dismissed on the merits, as recommended by Judge Muirhead without objection from Horstkotte.  Document nos. 4 (Muirhead, M.J.) and 24.

to succeed on the merits.[2]  The defendants have now moved for summary judgment, <u>see</u> Fed. R. Civ. P. 56, making substantially the same arguments that they made at the preliminary stage. Horstkotte, who is proceeding pro se, has not objected.  After reviewing the summary judgment record, this court grants the motion.  While Horstkotte may have preferred a more aggressive approach to his hepatitis C infection, the defendants have shown that they provided adequate medical care based on legitimate medical considerations.

## I.  <u>Applicable legal standard</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if it may reasonably be resolved in either party's favor at trial, and "material" if it has the capacity to sway the outcome under applicable law.  <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008) (quotations omitted).  In making this determination, the "court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all

---

[2]Document nos. 57 (Muirhead, M.J.) and 63.

reasonable inferences in that party's favor."  <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003).

Where, as here, the non-moving party files no response to the summary judgment motion, "[a]ll properly supported material facts in the moving party's factual statement shall be deemed admitted," since they were not "properly opposed."  L.R. 7.2(b)(2); <u>see also</u> <u>De Jesus v. LTT Card Svcs., Inc.</u>, 474 F.3d 16, 20 (1st Cir. 2007).  Summary judgment does not, however, "automatically follow."  <u>Stonkus v. City of Brockton Sch. Dep't</u>, 322 F.3d 97, 102 (1st Cir. 2003).  The court still must evaluate whether the moving party's submission meets the summary judgment standard.  <u>See</u> Fed. R. Civ. P. 56(e) ("If the adverse party does not . . . respond, summary judgment, <u>if appropriate</u>, shall be entered against the adverse party.") (emphasis added).  Consistent with this approach, the following background summary is based on the defendants' factual statement, which is supported by affidavits, medical records, and testimony from the preliminary injunction hearing.


II.  **<u>Background</u>**

Horstkotte arrived at the New Hampshire State Prison in June 2007 to begin serving a prison sentence with a three-year maximum.  As part of the routine intake process, he underwent a

medical exam and blood tests.  The tests revealed an elevated
liver enzyme level, most commonly associated with the hepatitis C
virus.  Further testing confirmed the presence of the virus.
Because Horstkotte had tested negative for the virus in June 2005
and had a normal liver enzyme level in November 2005, the
prison's chief medical officer--defendant Dr. Celia Englander[3]--
concluded that he must have contracted the disease within the
preceding year-and-a-half.  Horstkotte agrees with that
conclusion.

After the diagnosis, Dr. Englander evaluated whether
Horstkotte was an appropriate candidate for hepatitis C
treatment.  The treatment involves a combination of two drugs
(ribavirin and pegylated interferon) that can have serious side
effects.  Under prison protocol, an inmate is eligible for
treatment only if his minimum sentence is long enough to complete
the entire treatment process, which takes at least two-and-a-half
years (including one year of assessment, one year of drug
therapy, and six months of follow-up care).  This requirement is
based on a medical concern that incomplete or interrupted
treatment could lead to drug resistance or other adverse effects.
Since Horstkotte's minimum parole date was only six months away

_____

[3]Dr. Englander is a board-certified physician who has been
practicing medicine for 25 years and has significant experience
with hepatitis C patients.

4

(in January 2008), Dr. Englander deemed him ineligible for treatment under the protocol.

The prison allows its medical staff to depart from the protocol where medically necessary to treat inmates at advanced stages of hepatitis C.  But Dr. Englander concluded that no departure was medically necessary in Horstkotte's case because he was at a very early stage of the disease and not suffering any symptoms.[4]  Hepatitis C is a slow-moving disease that can take decades to progress to the point where it creates serious health problems requiring treatment.  In some cases, the disease never reaches that point because the body's natural immune response suppresses or even eliminates it.  Dr. Englander relied on materials from the National Institutes of Health and other sources indicating that drug combination therapy generally is not recommended in the early stages of the disease, given the potential side effects and the possibility of natural suppression.  She saw no significant threat to Horstkotte's health from waiting to see how his immune system responded.

Horstkotte, who wanted to take a more aggressive approach, requested a liver biopsy.  Dr. Englander considered the biopsy

---

[4]Horstkotte complained of various symptoms (e.g., leg and elbow pain, abdomen pain, light stool, and dark urine), but Dr. Englander has ruled out any connection between these complaints and hepatitis C, which generally is asymptomatic in its early stages.

medically unnecessary because its primary purpose is to determine the stage of the disease, which she already knew.  Nevertheless, in lieu of a biopsy, she allowed Horstkotte to undergo a FibroSURE test in October 2007 to measure fibrosis in his liver.[5] The test provides information similar to a liver biopsy, but is less invasive and less dangerous for the patient.  The test measured Horstkotte's fibrosis level near the bottom of stage one (out of five stages, where stage five is the worst).  Dr. Englander concluded that, because the test tends to be overly sensitive, Horstkotte's fibrosis level might even be below stage one.  Given the slow progression of the disease, she saw no realistic chance that Horstkotte's fibrosis level would increase to a stage requiring treatment before the end of his prison sentence.

Dr. Englander met with Horstkotte in December 2007 and explained to him the FibroSURE test results and her medical opinion.  She also gave him advice about living with hepatitis C. For the rest of Horstkotte's sentence, the prison's medical staff continued to monitor the status of his disease.  In April 2008, further blood testing revealed that Horstkotte's liver enzyme level had dropped considerably since his arrival in prison.  Six

---

[5]Horstkotte also received vaccinations against hepatitis A and B, for which he tested negative.

months later, in October 2008, Horstkotte was released on
parole.[6]


III.  **Analysis**

        The defendants have moved for summary judgment on all of
Horstkotte's claims:  (A) his Eighth Amendment claim alleging
that the defendants failed to provide adequate medical care for
his hepatitis C infection; (B) his ADA claim alleging that the
defendants discriminated against him based on that disease; and
(C) his related state-law claims for negligence, medical
malpractice, and intentional infliction of emotional distress.
As explained below, the defendants have shown that Horstkotte
received adequate medical care for his hepatitis C infection
based on legitimate medical considerations.  Horstkotte has not
filed an objection refuting this evidence or identified a medical
expert willing to testify on his behalf.  This court therefore
grants summary judgment to the defendants on all claims.

_____

        [6]Horstkotte was initially denied parole in January 2008.  In
his complaint, filed the following month, he alleged that the
prison violated his due process rights by delaying that parole
hearing for two weeks.  As reformulated by Judge Muirhead,
however, the complaint no longer included that claim.  Documents
no. 4 and 24.  Horstkotte did not object to that ruling and thus
waived his claim.  In any event, Judge Muirhead found--and this
court agreed--that the two-week delay "is not a deprivation of
due process."  Document nos. 57 (Muirhead, M.J.) and 63.

A.   *Eighth Amendment claim*

Horstkotte claims that the defendants violated his Eighth Amendment rights by denying him adequate medical care for his hepatitis C infection.  See U.S. Const. amend. VIII (prohibiting the infliction of "cruel and unusual punishments").  To prevail on this claim, Horstkotte must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).  This standard has both objective and subjective components.  Objectively, the conduct must pose a "substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Subjectively, the conduct must involve "wanton disregard of the inmate's rights."  DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991).  A showing of simple negligence or medical malpractice is not enough.  See Feeney, 464 F.3d at 162. "The care provided must have been 'so inadequate as to shock the conscience.'"  Id. (quoting Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991)).

As to the objective component, the defendants have shown that Horstkotte did not have a serious medical need for the more aggressive treatment he wanted.  Dr. Englander, an experienced physician, concluded that Horstkotte was at a very early stage of

8

hepatitis C, free of any symptoms, and unlikely to progress to a more advanced stage of the disease for many years, if at all. Horstkotte faced no significant health risk, in her view, from waiting to see how his immune system responded to the disease. In fact, she concluded that it was the aggressive treatment, not the wait-and-see approach, that posed an unnecessary risk of harm at that stage, given its potential side effects. These conclusions were all based on legitimate medical considerations, and Horstkotte has not presented any evidence that puts them in genuine dispute.

As to the subjective component, the defendants have shown that they did not act with deliberate indifference. Dr. Englander provided a good-faith explanation for all of her treatment decisions. Moreover, in order to calm Horstkotte's fears, she even allowed him to undergo extra testing that she considered medically unnecessary--a far cry from wantonly disregarding his rights. The testing confirmed her conclusion that Horstkotte's disease was at an early stage and did not require more aggressive treatment. Prison medical staff continued to monitor his condition for the rest of his time in prison and saw significant improvement in his liver enzyme levels. This is not a case "where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" Feeney, 464 F.3d at 163 (quoting Torraco, 923 F.2d at

234).  It is a case where, despite having received adequate
attention and essential care, Horstkotte disagreed with his
doctor's approach.  "[W]hen a plaintiff's allegations simply
reflect a disagreement on the appropriate course of treatment,
such a dispute with an exercise of professional judgment . . .
falls short of alleging a constitutional violation."  Id. at 162
(quotation omitted).

Our court of appeals recently affirmed the dismissal on
summary judgment of a nearly identical Eighth Amendment claim.
See Castello v. Martin, 197 Fed. Appx. 14 (1st Cir. 2006)
(unpublished).  In that case, the inmate also suffered from the
early stages of hepatitis C, and the prison also declined to
authorize drug combination therapy, opting instead to monitor his
condition with blood tests and a liver biopsy.  Id. at 15.  The
court of appeals saw no evidence of deliberate indifference:

> While it is clear that [the inmate] strongly disagrees
> with the medical care he is receiving, it is also clear
> that [the medical staff] is providing decent, timely
> health care . . . at a level reasonably commensurate
> with modern medical science and of a quality acceptable
> within prudent professional standards.  . . . [The
> evidence] shows that modern medical science has reached
> a consensus that treatment generally is appropriate for
> patients suffering more severe cases of [hepatitis C],
> where a liver biopsy shows moderate inflammation and
> necrosis and portal or bridging fibrosis.  None of
> these conditions were detected in [the inmate's] liver
> biopsy.  On this record, [the inmate] failed to show
> that he has suffered an objectively serious
> deprivation, or that [defendants] have subjectively
> acted in wanton disregard of his rights.  See also

Bender v. Regier, 385 F.3d 1133, 1135 (8th Cir. 2004)
("Treatment for [hepatitis C] patients with mild liver
problems may be safely deferred.").

Id. (quotations omitted).

This case has only two minor differences from Castello,
neither of which is constitutionally significant.  The first is
that Horstkotte underwent a FibroSURE test, rather than a more
invasive biopsy, to check his liver for fibrosis.  Dr. Englander
testified that both tests provide similar information and that
she opted for the safer one.  Neither test was medically
necessary in her opinion, since Horstkotte's disease was already
known to be at a very early stage, but she authorized a FibroSURE
test anyway because Horstkotte wanted more information.  This
decision reflected care for, not indifference to, Horstkotte's
medical needs.  Cf. Hollis v. Dir. of Corr., 560 F. Supp. 2d 920
(C.D. Cal. 2008) (rejecting Eighth Amendment claim where prison
denied liver biopsy to inmate in early stages of hepatitis C,
even without FibroSURE testing); Jordan v. Delaware, 433 F. Supp.
2d 433 (D. Del. 2006) (same).  Moreover, like the liver biopsy in
Castello, Horstkotte's FibroSURE test confirmed that he did not
have an advanced case of hepatitis C.

The other difference between this case and Castello is that
here, the prison applied a specific protocol limiting drug
combination therapy to inmates whose minimum sentence is long

11

enough to complete the entire treatment process.  The defendants
have shown that this requirement is based on a legitimate medical
concern that interrupted or incomplete treatment could lead to
drug resistance.  See, e.g., Troutt v. Corr. Healthcare Mgmt.,
248 Fed. Appx. 910, 914 (10th Cir. 2007) (unpublished) (finding
no Eighth Amendment violation where prison denied treatment for
similar timing reasons).  While blind adherence to such a
protocol in the face of serious medical needs might raise a
triable Eighth Amendment issue, see McKenna v. Wright, 386 F.3d
432 (2d Cir. 2004), that is not what happened here.  Dr.
Englander testified that she could have departed from that
protocol if medically necessary and that she declined to do so
because Horstkotte was at an early stage of the disease and was
not facing a significant risk of harm.  As in Castello,
Horstkotte's Eighth Amendment claim for failure to provide
adequate medical care must be rejected.  See Hines v. Anderson,
547 F.3d 915, 921 (8th Cir. 2008) (finding no Eighth Amendment
violation where "[t]here is no evidence that the use of [prison]
guidelines is resulting in harm or that the [prison] is
deliberately disregarding Hepatitis C diagnoses").[7]

---

[7]As a separate theory, Horstkotte claims that the defendants
violated his Eighth Amendment rights by failing to provide an
adequate diet to meet his medical needs.  This claim must be
dismissed because Horstkotte failed to exhaust his administrative
remedies as required by the Prison Litigation Reform Act
("PLRA"), 42 U.S.C. § 1997e(a).  He filed an inmate request slip

**B.   *ADA claim***

Horstkotte also claims that the defendants violated the ADA by denying him the benefit of adequate medical care because he has hepatitis C.  The ADA provides in relevant part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  To prevail on this claim, Horstkotte must show that (1) he is a qualified individual with a disability; (2) that he was either excluded from or denied the benefits of the prison's medical services; and (3) that such exclusion or denial was because of his disability.  <u>Toledo v. Sanchez</u>, 454 F.3d 24, 31 (1st Cir. 2006).

---

complaining about the prison diet, but never pursued his complaint through the rest of the prison's three-level grievance process, as set forth in Procedure and Policy Directive ("PPD") 1.16.  <u>See</u> <u>Ellison v. N.H. Dep't of Corr.</u>, 2009 DNH 017, 7-9 (describing each level of the grievance process).

Even if Horstkotte had properly exhausted this claim, however, the summary judgment record establishes that it has no merit.  Dr. Englander testified that Horstkotte has no special dietary requirements as a result of his disease and that the prison diet posed no health risks to him.  The prison's food service supervisor confirmed that the diet is healthy and provided sample menus highlighting the fruit and vegetable content.  Horstkotte has not filed an objection refuting these assertions, which means that they must be treated as admitted. <u>See</u> Part I, <u>supra</u>.  They suffice to defeat Horstkotte's Eighth Amendment challenge to the prison diet.

13

The defendants have shown that Horstkotte had no disability while in prison and thus cannot satisfy the first element of his ADA claim.  To establish a disability, Horstkotte must prove that he suffers from a physical or mental impairment that imposes a substantial limitation on a major life activity.  Rolland v. Potter, 492 F.3d 45, 48 (1st Cir. 2007).  This determination is made on a "case-by-case basis."  Id.  In this case, Dr. Englander testified that Horstkotte was symptom-free and that his disease, still at a very early stage, posed no significant health threat. While hepatitis C might qualify as a disability at a more advanced stage, "numerous courts have held that [hepatitis C] alone, without a demonstration of how it has limited a major life activity, is not enough to qualify as a disability."  Amos v. Corr. Med. Svcs., Inc., No. 06-cv-1892, 2009 WL 1884142, at *6 (D.N.J. June 30, 2009) (citing Furnish v. SVI Sys., Inc., 270 F.3d 445, 449 (7th Cir. 2001), and Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285 (S.D.N.Y. 2003)); see also Wilder v. S.C. Dep't of Corr., No. 3:08-2486-MBS, 2009 WL 2948514 (D.S.C. Sept. 1, 2009) (ruling, where inmate's hepatitis C infection was asymptomatic, that it was not a disability under the ADA).

Moreover, even if his hepatitis C infection qualified as a disability under the ADA, Horstkotte still would not be able to prove the third element:  that the defendants denied him medical services because of that disability.  His claim is really that

14

the defendants refused to treat him <u>for</u> his disability.  Our
court of appeals has made clear that the "ADA does not create a
remedy for medical malpractice," unless the "medical
unreasonableness [is] framed within some larger theory of
disability discrimination."  <u>Kiman v. N.H. Dep't of Corr.</u>, 451
F.3d 274, 284 (1st Cir. 2006) (quoting <u>Bryant v. Madigan</u>, 84 F.3d
246, 249 (7th Cir. 1996), and <u>Lesley v. Chie</u>, 250 F.3d 47, 55
(1st Cir. 2001)).  Horstkotte has not framed his ADA claim within
any larger theory of discrimination; it is just a medical
malpractice claim framed within ADA terminology.  Courts have
consistently rejected such claims in cases involving inmate
complaints about hepatitis C treatment.  <u>See</u>, <u>e.g.</u>, <u>Wilder</u>, 2009
WL 2948514, at *4 (citing <u>Iseley v. Beard</u>, 200 Fed. Appx. 137,
142 (3d Cir. 2006)); <u>Lopez v. Corr. Med. Svcs.</u>, No. 04-2155, 2009
WL 1883915, at *11 (D.N.J. June 30, 2009); <u>Jordan</u>, 433 F. Supp.
2d at 442-43.  This court, too, concludes that Horstkotte's ADA
claim must be denied.


**C.   *State-law tort claims***

     Finally, Horstkotte claims that the defendants committed
three torts--negligence, medical malpractice, and intentional
infliction of emotional distress--under New Hampshire state law
by failing to provide proper treatment for his hepatitis C

infection.[8]  As the defendants note, Horstkotte cannot prevail on
his negligence and medical malpractice claims without expert
testimony.  See, e.g., Smith v. HCA Health Svcs. of N.H., Inc.,
159 N.H. 158, 160-61 (2009) (applying N.H. Rev. Stat. § 507-E:2,
which requires the plaintiff to present expert testimony "[i]n
any action for medical injury"); Est. of Joshua T. v. New
Hampshire, 150 N.H. 405, 408 (2003) (requiring expert testimony
"whenever the matter to be determined is so distinctly related to
some science, profession, business or occupation as to be beyond
the ken of the average layman").  Horstkotte's expert disclosure
deadline passed long ago.[9]  He has not designated any experts,
requested a deadline extension, or given this court any reason to
believe that he intends to present expert testimony at trial.
"While courts have historically loosened the reins for pro se
parties, the right of self-representation is not a license not to

---

[8]In most cases, the dismissal of all federal claims before
trial "will point toward declining to exercise [supplemental]
jurisdiction over the remaining state-law claims."  Carnegie-
Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  But there
is no "mandatory rule" requiring dismissal; courts must "consider
and weigh in each case, and at every stage of the litigation, the
values of judicial economy, convenience, fairness, and comity in
order to decide whether to exercise jurisdiction."  Id.  In this
case, the close proximity to trial and the heavy overlap between
Horstkotte's federal and state-law claims both point in favor of
exercising jurisdiction.  See, e.g., Nowak v. Ironworkers Local 6
Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996).  This court
therefore resolves his state-law claims as well.

[9]Document no. 66 (setting a deadline of February 5, 2009).

comply with relevant rules of procedural and substantive law."
Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503,
506 (1st Cir. 1994) (quotations omitted).  Since Horstkotte lacks
the expert testimony needed to create a trialworthy issue, this
court grants summary judgment on his negligence and medical
malpractice claims.  See, e.g., Rojas-Ithier v. Sociedad Espanola
de Auxilio Mutuo y Beneficiencia, 394 F.3d 40, 43-44 (1st Cir.
2005) (affirming summary judgment on medical malpractice claim
where non-moving party presented no expert testimony).

        Whether Horstkotte also needs expert testimony to support
his intentional infliction of emotional distress claim is an open
question under New Hampshire law.  See Saalfrank v. Town of
Alton, 2009 DNH 162, 17 (discussing the case law).  This court
need not answer it now, though, because Horstkotte's claim
clearly falls short of the "very high" standard for relief under
New Hampshire law.  Moss v. Camp Pemigewassett, Inc., 312 F.3d
503, 511 (1st Cir. 2002).  To prevail on such a claim, Horstkotte
must show that the defendants engaged in "extreme and outrageous
conduct" that "intentionally or recklessly cause[d] severe
emotional distress."  Mikell v. Sch. Admin. Unit No. 33, 158 N.H.
723, 728 (2009).  The conduct must go "beyond all possible bounds
of decency."  Id.  As explained above in the Eighth Amendment
analysis, the defendants have shown that they acted in good faith
and made treatment decisions based on legitimate medical

considerations.  Under this standard, on this record, the court cannot conclude that their conduct even approaches an extreme or outrageous level.  This court therefore grants summary judgment on Horstkotte's emotional distress claim as well.

## IV.  **Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment[10] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:     December 11, 2009

cc:        Todd M. Horskotte, pro se
           Nancy J. Smith, Esq.

_____

[10]Document no. 72.